IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MORRIS WESTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-02440-N |
| | § | |
| FINANCIAL TECHNOLOGY | § | |
| SOLUTIONS INTERNATIONAL, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendants Financial Technology Solutions International, Inc. ("FTSI") and Susan B. Napier's (collectively, "Defendants") motion for summary judgment [27]. The Court grants in part and denies in part.

**I. ORIGINS OF THE MOTION**

This case arises from Plaintiff Morris Weston's employment by Defendants FTSI and Susan B. Napier, CEO of FTSI. *See* Answer ¶6 [19]. Defendants hired Weston as a Regional Sales Manager in April 2014. *See* Second Am. Compl. ¶22 [18]. After Weston accepted the position, he allegedly provided Defendants with his top 25 customers based on Defendants' promise he would be paid commission based on all sales within Oklahoma and Texas. *Id.* at ¶¶18–24.

Weston alleges Napier repeatedly asked him to introduce a fellow FTSI Regional Manager, Lisa Huertas, to his prior customers only to reduce his territory in favor of Huertas.

ORDER – PAGE 1

Specifically, in May of 2014, Napier allegedly requested Weston introduce Huertas to Weston's prior contacts in Midland, Lubbock, and Odessa. App. to Pl.'s Resp. to Mot. for Summ. J. (App. to Pl.'s Resp.) Ex. 1, ¶6 [34-1]. Weston allegedly did so and thereafter Napier informed him that Huertas would take over the West Texas Market, which included Midland, Lubbock, and Odessa. *Id.* In June 2014, Napier allegedly requested Weston attend a convention in San Antonio where he introduced Huertas to more of his prior customers. *Id.* at ¶7. Weston allegedly scheduled meetings with his prior customers at the convention. Second Am. Compl. at ¶32. Weston alleges Napier later informed him Huertas would be attending the meetings in his place. App. to Pl.'s Resp. Ex. 1, ¶7. Weston further alleges Napier gave Huertas more of his territory, including San Antonio, Houston, and Austin. *Id.* In October 2014, Weston attended another convention in Dallas, where Weston alleges Napier instructed him to remain in the lobby and arrange meetings and dinners with bankers with whom Weston had a prior relationship. *Id.* at ¶8–9; *see also* Answer ¶36–40. Weston allegedly arranged meetings and dinners for Napier and Huertas with bankers he knew from Oklahoma. *Id.* at ¶9.

At one dinner, Weston claims Napier told him, "[a]s you can see, I like women in powerful positions in my company." App. to Pl.'s Resp. Ex. 6, 31–32. Defendants claim Napier said, "I appreciate strong women and men." Napier Dep. 41:18–25, App. to Defs.' Mot. for Summ. J. (App. to Defs.' Mot.) Ex. P [29-16]. Weston then complained to FTSI's Vice President of Human Resources, Joanie Hernandez, of Napier's treatment. App. to Pl.'s Resp. Ex. 1, ¶11. Defendants terminated Weston two days later. *Id.* Defendants claim they

ORDER – PAGE 2

terminated Weston for poor job performance. *See* Answer at ¶46. Defendants' evidence shows they rated Weston's performance as: "meets all expectations." App. to Defs.' Mot. Ex. F [29-6]; App. to Defs.' Mot. Ex. G [29-7]; *see also* App. to Pl.'s Resp. Ex. 9, 26 [34]. Weston claims he received a good performance review from Defendants, and that poor job performance was merely pretext for gender discrimination and retaliation against him for complaining about Napier's treatment. *See* App. to Pl.'s Resp. Ex. 1, ¶¶ 12–13; Second Am. Compl. ¶35, 47. Weston also claims FTSI sold its goods and services to Weston's prior customers and refused to pay him any commission. *See* App. to Pl.'s Resp. Ex. 1, ¶10; Second Am. Compl. ¶42.

Weston brought a suit alleging fraud, breach of contract, sex discrimination, and retaliation. Defendants move for summary judgment on all claims. Weston opposes the motion.

## II. THE SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS DEFENDANTS' MOTION IN PART AND DENIES IN PART

#### A. The Court Grants Defendants' Motion for Summary Judgment on Weston's Breach of Contract Claim

Defendants move for summary judgment on Weston's breach of contract claim. According to Defendants, Weston cannot establish three of the four elements of the claim. "The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC,* 490 F.3d 380, 387 (5th Cir. 2007). Weston claims his offer letter created a valid enforceable contract that he would be paid for commission on sales. Weston further claims he closed a commission-eligible sale under the contract. *See* Pl.'s Resp. to Mot. for Summ. J. 21. However the sale Plaintiff claims he made was a light audit. *See* App. to Pl.'s Resp. Ex. 10 [34]. The Offer Letter does not promise commissions, nor is it company policy for salespersons to be paid sales commissions on light audits. *See* Valdez Dep. 10:7–11:20, Defs.' App. Ex. U [29-21]. Because a light audit is not a commission-eligible sale, Weston has not established a breach of contract claim and summary judgment is appropriate.

#### B. The Court Denies Defendants' Motion for Summary Judgment on Weston's Discrimination Claim

Defendants next move for summary judgment on Weston's sex discrimination claim. According to Defendants, there is no genuine dispute of material fact as to Weston's sex discrimination claim because he has not established a prima facie case. Defendants further

maintain that even if Weston established a prima facie case of sex discrimination, they have a legitimate, nondiscriminatory, nonretaliatory reason for decreasing Weston's sales territory and ultimately terminating his employment. Mot. for Summ. J. 13 [27].

Weston established a prima facie case of discrimination. To establish a prima facie case of discrimination, a plaintiff must establish "(1) [he] is a member of a protected class, (2) [he] was qualified for [the] position, (3) [he] suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). A plaintiff may also satisfy the fourth prong by showing he was replaced by someone outside the protected class. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179 (5th Cir. 1999)

Defendants claim Weston fails to establish element two, that he was qualified for the position, and element four, that he was replaced by someone outside of his protected class. *See* Mot. for Summ. J. 14. Weston submitted evidence sufficient to establish he met the minimum qualifications for the position. App. to Pl.'s Resp. Ex. 1, ¶ 13; *see also Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir. 1988) ("the fact that [a plaintiff] was hired initially indicates that he had the basic qualifications."). Weston also alleges he was replaced by Huertas, someone outside of his class. *See* Pl.'s Resp. to Mot. for Summ. J. 10; *see also* App. to Pl.'s Resp. Ex. 1, ¶15. To this end, Weston presents evidence that Huerta systematically replaced him as regional manager for his former territories. *See, e.g.*, App. to Pl.'s Resp. Ex. 1, ¶6–7. Defendants disagree and allege he was replaced by a member of the same class. *See* Huertas Dep. 41:18–25, Defs.' App. Ex. A [29-1]. The Defendants'

disagreement with Weston's evidence does not defeat Weston's prima facie case. *See Bienkowski*, 851 F.2d at 1507 (reversing summary judgment where competing affidavits and disagreement over employee's performance created a jury issue of intentional age discrimination). As Weston produces evidence sufficient to establish his prima facie case, summary judgment is inappropriate.

Since Weston establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to show "(1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

Defendants argue that they had a legitimate, nondiscriminatory reason for the adverse action. Defendants claim they terminated Weston because of his poor performance. Weston claims this reason was merely pretextual. Summary judgment is inappropriate if Weston produces evidence sufficient to raise a fact issue regarding proffered nondiscriminatory reason for termination. *Heinsohn v. Carabin & Shaw, P.C.*, 2016 WL 4011160, at *7 (5th Cir. 2016).

Here, Weston produced evidence from which a reasonable juror could infer that the reason proffered by the Defendants was pretextual. Specifically, Weston claims Napier stated "[a]s you can see, I like women in power positions in my company." App. to Pl.'s

Resp. Ex. 9, 31–32.  Weston further claims Napier favored Huertas by using Weston's contacts to help Huertas and slowly giving Huertas Weston's territory.  *See* App. to Pl.'s Resp. Ex. 1, ¶15; Second Am. Complaint ¶¶ 27–34.  Weston also produces evidence he was meeting all expectations.  App. to Pl.'s Resp. Ex. 6, 26 [34-6].  Weston also submits an email in which Jill Gongora, FTSI's Vice President, expresses "[Napier] has some concern with Morris' performance. She is willing to give him some time to see some of his deals come to fruition." *Id.* at Ex. 7.  FTSI terminated Weston eleven days later.  App. to Pl.'s Resp. Ex. 1, ¶19.  Weston maintains "ten days was hardly sufficient time to see if some of my deals would come to fruition." *Id.*; *see also id.* at ¶16 ("It takes about six months to close a sale.").  Moreover, Weston offers evidence suggesting that Defendants simply wanted to plunder Weston's customer contacts, and had no further use for him once that had been accomplished.

Based on the forgoing evidence, a reasonable juror could infer the Defendants' explanation for Weston's termination, his poor performance, was pretextual.  Because Weston produced evidence sufficient to contest and refute the Defendants' evidence of a legitimate, nondiscriminatory reason and created a genuine issue of material fact as to whether the Defendants' proffered explanation was pretext, summary judgment is inappropriate.

### *C. The Court Denies Defendants' Motion for Summary Judgment on Weston's Retaliation Claim*

Defendants also move for summary judgment on Weston's retaliation claim. According to Defendants, there is no genuine dispute of material fact as to Weston's retaliation claim and summary judgment is proper. Specifically, Defendants claim Weston cannot establish a causal link between his termination and any protected activity. Mot. for Summ. J. 19. Defendants also argue that if Weston has established a prima facie case, he has not produced evidence sufficient to create a genuine issue of material fact as to pretext.

To establish a prima facie claim of retaliation, a plaintiff much establish "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). If a Plaintiff does so, "the burden then shifts to the defendant to proffer a legitimate rationale for the underlying the employment action." *Id.* To survive a motion for summary judgment, a plaintiff "must raise a genuine issue of material fact as to whether this explanation is merely pretext, such that a reasonable fact-finder could infer discrimination." *Woodson v. Scott & White Mem'l Hosp.*, 255 F. App'x 17, 20 (5th Cir. 2007). "A plaintiff can establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (citations omitted).

Defendants first argue Weston did not establish a causal link between his termination and his complaint about Napier's treatment. As a threshold issue, Weston asserts the close temporal proximity between his complaint about Napier and his dismissal indicates a causal

link. *See McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Weston does not rely on temporal proximity alone to establish a causal link. Weston alleges Napier made a comment insinuating a preference for strong female employees within the company. *See* App. to Pl.'s Resp. Ex. 6, 31–32. This allegation, along with the temporal proximity, is sufficient to establish a prima facie case of retaliation.

Defendants again argue Weston has not produced evidence sufficient to create a genuine issue of material fact as to pretext. As discussed above, a reasonable juror could infer the Defendants' explanation for Weston's termination, his poor performance, was pretextual based on the evidence Weston submitted. *See supra* Part III.B. Thus summary judgment is inappropriate.

Additionally, and particularly probative of pretext in regards to Weston's retaliation claim, Weston offers evidence that shows FTSI did not follow its policies for handling a discrimination complaint. *See* Pl.'s Resp. to Mot. for Summ. J 18. Both the deposition testimony of FTSI's Vice President of Human Resources, Joanie Hernandez, and the FTSI handbook make clear FTSI has a policy of investigating complaints of discrimination with "an effective, thorough, and objective investigation of the allegations." *See* App. to Pl.'s Resp. to Mot. for Summ. J 11; Hernandez Dep. 8–9, Defs.' App. Ex. Q [29-17]. Weston alleges FTSI did not conduct a fair, objective, effective, and thorough investigation of his complaint, as required by FTSI company policy. *See* Pl.'s Resp. to Mot. for Summ. J. 18.

Failure to follow company policies may be evidence of pretext. *See Pruitt v. Dallas Indep. Sch. Dist.*, 2006 WL 1359909, at *7 (N.D. Tex. 2006) ("An employer's failure to follow its own policies and procedures may be probative of discriminatory intent." (citing *Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 336 (5th Cir. 2005)). Based on the summary judgment record, there is a genuine dispute as to whether Hernandez followed company policy. *See* Hernandez Dep. 12:15–13:7, 29–37 Defs.' App. Ex. Q [29-17].

Accordingly, there is a genuine issue of material fact as to the veracity of the reason proffered by the Defendants. Because Weston produced evidence sufficient to contest and refute the Defendants' evidence of a legitimate, nondiscriminatory reason and created a genuine issue of material fact as to whether the Defendants' proffered explanation was pretext, summary judgment is inappropriate.

### *D. The Court Denies Defendants' Motion for Summary Judgement on Weston's Fraud Claim*

Finally Defendants move for summary judgment on Weston's fraud claim. According to the Defendants, Weston cannot establish any elements of his fraud claim. Fraud consists of "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). Weston claims he relied upon the Defendants' fraudulent representations as to the size of his territory and the opportunity he would have to sell to his contacts. App. to Pl.'s Resp. Ex. 1, ¶27. Weston claims that but for this reliance he would not have disclosed his client list, agreed to the employment, or introduced FTSI to his prior

customers. Pl.'s Resp. to Mot. for Summ. J. 23. The Defendants take issue with the speculative nature of Weston's evidence. But "since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Defendants further claim they reduced his territory because of poor performance. *See* Defs.' Reply 15 [37]. As stated above, there is a genuine dispute over the quality of Weston's performance. Thus the Court concludes there is an issue of genuine material fact as to Weston's fraud claim, and as such, summary judgment is inappropriate.

## CONCLUSION

For the forgoing reasons, the Court grants Defendants' motion for summary judgment in part and denies in part.

Signed October 12, 2016.

_____
David C. Godbey
United States District Judge